IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GEN3 MARKETING LEP | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 19-3498 |
| ELLA PARADIS, INC. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                            **January 15, 2020**

Plaintiff Gen3 Marketing LEP alleges Defendant Ella Paradis, Inc. breached the parties' online marketing agreements. Ella Paradis filed counterclaims alleging it was Gen3 who breached the agreements. In addition to its breach of contract counterclaim, Ella Paradis also brings counterclaims for unjust enrichment, fraudulent inducement, and unfair trade practices. Gen3 moves to dismiss Ella Paradis's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant the motion in part by dismissing Ella Paradis's fraudulent inducement claim with leave to amend. The Court will deny the motion with respect to the remaining claims.

**BACKGROUND**[1]

Ella Paradis is an online retailer. Gen3 provides online marketing services for companies like Ella Paradis. In October 2018, Ella Paradis reached out to Gen3 to help with its marketing strategy. During the companies' initial communications, Gen3 allegedly misrepresented its capabilities to Ella Paradis. A couple months later, on November 30 and December 1, 2018, the companies entered into two contracts for two different types of online marketing services. In one of the contracts, Gen3 agreed to provide search engine optimization services for $5,000 a month plus expenses. In the other contract, Gen3 agreed to provide pay per click services for $6,000 a

---

[1] In evaluating Gen3's motion to dismiss, the Court takes the well-pleaded facts set forth in the Compliant as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

month plus expenses. The Pay Per Click Agreement also had a provision giving Gen3 a bonus if it hit certain revenue goals.

The two contracts were nearly identical. Both had provisions requiring Gen3 to devote adequate time and energy to the project to conform to the industry standard of care, and to hire the appropriate personnel. *See* Am. Answer and Countercls. Exs. A ¶ 3, and B ¶ 3. Both contracts also had provisions allowing either party to terminate the contract with fifteen-days' notice at the end of the initial six-month term. *Id.* at Exs. A ¶ 2 and B ¶ 2.

Ella Paradis was not happy with Gen3's work under the contracts. Ella Paradis wanted Gen3 to increase its return on advertising spend (ROAS). ROAS is the ratio of Ella Paradis's profit to its advertising. For example, a 2.0 ROAS would mean Ella Paradis made two dollars for every one dollar it spent on advertising. In addition to failing to hit the appropriate ROAS, Gen3 allegedly did not devote enough time to Ella Paradis, follow the industry standard of care, or hire the right personnel.

On May 16, 2019, Ella Paradis notified Gen3 it was terminating the Pay Per Click Agreement at the end of the initial six-month term. In response, Gen3 allegedly refused to continue working under the Search Engine Optimization Agreement. Ella Paradis therefore terminated that agreement as well.

On July 1, 2019, Gen3 filed this case in the Montgomery County Court of Common Pleas. Gen3 alleged Ella Paradis had not paid Gen3 the money it was entitled to under the agreements. It brought claims for breach of contract, quantum meruit, and account stated. Ella Paradis removed the case to this Court and filed an answer with four counterclaims: breach of contract, unjust enrichment, fraudulent inducement, and unfair trade practices. Gen3 now moves to dismiss all four

of Ella Paradis's counterclaims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**DISCUSSION**

The Court will grant Gen3's motion to dismiss as to the fraudulent inducement claim because Ella Paradis has failed to plead that claim with particularity. The Court will deny the motion with respect to the remaining three claims.

A court must deny a motion to dismiss when, viewing the facts in the light most favorable to the nonmoving party, the complaint states a claim for which relief can be granted. *Owner Operator Indep. Drivers Ass'n, Inc. v. Pa. Tpk. Comm'n*, 934 F.3d 283, 290 n. 7 (3d Cir. 2019) ("To withstand a motion to dismiss, a complaint must allege a claim that is plausible on its face when accepting all the factual allegations as true and drawing every reasonable inference in favor of the nonmoving party.") To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations" as long as it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Using this standard, the Court will address each of Ella Paradis's counterclaims.

First, the Court finds Ella Paradis adequately pled its breach of contract claim. To state a breach of contract claim under Pennsylvania law, a party must show: (1) the existence of a contract, (2) the defendant's breach, and (3) damages from the breach. *J.F. Walker Co. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002). Only one of those three elements is at issue here: Gen3's breach.

Ella Paradis adequately alleges Gen3 breached the contracts by failing to devote adequate time to Ella Paradis, failing to follow the standard of care, and failing to hire adequate personnel. The language of both contracts specifically required Gen3 to:

> devote to the Customer [Ella Paradis] such time, attention and energy as is reasonably required to perform the Services and in accordance with the standard of care customary in the Company's [Gen3's] industry. . . . [And] assign personnel with appropriate experience and training, as reasonably determined by the Company [Gen3], to perform the Services.

Am. Answer and Countercls. Exs. A ¶ 3, and B ¶ 3.

In its counterclaims, Ella Paradis specifically explained how Gen3 failed to meet these requirements. Ella Paradis alleged Gen3 did not devote adequate time, attention, and energy because "Gen3 had failed to perform routine and plainly necessary tasks needed to accomplish EP's requirements under the Agreements since the Agreements' inception." Am. Answer and Countercls., Counterclaim ¶ 28.[2] Ella Paradis also alleged Gen3 hired inadequate personnel. For example, it alleges "the GEN3 employees responsible for EP's Google Ads account lacked the appropriate training and experience to optimize properly the settings, organization, and performance of the account to meet EP's requirements under the Agreements." *Id.* at ¶ 29. In addition, Ella Paradis alleged Gen3 did not meet the standard of care by, for example, failing to conform to Google Ads best practices. These allegations are sufficient to state a breach of contract claim.[3]

The Court next finds Ella Paradis adequately pled its unjust enrichment claim. "The elements of unjust enrichment are [1] benefits conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, and [3] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of

---

[2] The paragraph numbering in the Amended Answer and Counterclaims restarts at the beginning of the counterclaims, so the Court will use "Counterclaim ¶" to denote this numbering.

[3] The counterclaims also attempt to allege Gen3 breached the pay per click agreement because it did not meet a 2.0 ROAS requirement. Gen3 urges the Court to find as a matter of law that the agreement did not have this ROAS requirement. Because the Court finds Ella Paradis's other allegations are sufficient to state a breach of contract claim, the Court will not address whether the agreement required a 2.0 ROAS.

value." *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007). Here, Ella Paradis has pled each of these elements. The benefit it conferred to Gen3 was money under the contract. Gen3 understood that it was being paid for performing the marketing services. The benefit would be inequitable because Gen3 allegedly did not perform the marketing services Ella Paradis paid for.

Gen3 argues the Court should dismiss Ella Paradis's unjust enrichment claim because it is duplicative of the contract claim. The Court disagrees. Because an unjust enrichment claim is a "quasi-contract" claim, a party cannot recover on this claim when there is a valid contract. *Ne. Fence & Iron Works, Inc.*, 933 A.2d at 669. A breach of contract claim is therefore inconsistent with an unjust enrichment claim; the former requires a contract whereas the latter requires no contract. Ultimately, a party will only be able to recover on one of these two claims, however, these claims may be pled in the alternative. *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. Ct. 2009); *see also* Fed. R. Civ. P. 8(d) (allowing inconsistent and alternative pleadings). Here, Ella Paradis has pled the unjust enrichment claim as an alternative to its breach of contract claim, so the unjust enrichment claim should not be dismissed.[4]

The Court now turns to Ella Paradis's fraudulent inducement claim and finds this claim must be dismissed with leave to amend. To prove fraudulent inducement under Pennsylvania law, a party must show:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

---

[4] Gen3 took advantage of this exact alternative pleading rule when it pled both a breach of contract claim and a quasi-contractual quantum meruit claim in its initial complaint in this case. *See Ne. Fence & Iron Works, Inc.*, 933 A.2d at 667 ("Unjust enrichment is a synonym for quantum meruit.")

*Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005).

In federal court, a party must plead any fraud claim with particularity under Federal Rule of Civil Procedure 9(b). Under this Rule, "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal citations omitted; alteration in original). To achieve the appropriate amount of particularity, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*

Ella Paradis has not met Rule 9(b)'s heightened pleading standard here. Its counterclaim alleges:

> Prior to entering into the Agreements, and throughout the initial six-month term, GEN3 consistently represented that it had the capability, capacity, knowledge, and necessary personnel to meet the minimum revenue and ROAS requirements under the Agreements—despite its documented inability to do so. As a result of these repeated misrepresentations, GEN3 induced EP to enter into and complete the initial term of the Agreements.

Am. Answer and Countercls., Counterclaim ¶ 26. This allegation is too general to satisfy Rule 9(b). It includes a broad time frame with no specified beginning date. Assuming the time frame begins when the parties first contacted each other in October 2018, this timeframe includes an eight-month window.[5] This allegation also does not say who at Gen3 made these allegedly false representations or where or how the representations were made. The allegations regarding the

---

[5] This timeframe is also problematic because it includes statements after Ella Paradis made the agreements. Ella Paradis must allege it took some action in reliance on Gen3's statements. Statements Gen3 made after the agreements were signed could not have induced Ella Paradis to sign the agreements. While Ella Paradis alleges it was induced to "complete the initial term of the Agreements," it does not allege it failed to exercise an option to terminate the agreements before the end of that term. Nor can it. Absent circumstances not relevant here, the agreements do not allow the parties to terminate them before the end of the initial term. *See* Am. Answer and Countercls. Ex.s A ¶¶ 2, 9, and B ¶¶ 2, 9

nature of the misrepresentations is also very general. For example, the counterclaim does not say which capacities, capabilities, and knowledge Gen3 claimed to have. Because Ella Paradis's allegations fail to specify when the misrepresentations were made, how they were made, what they contained, or who made them, these allegations do not meet Rule 9(b)'s heightened pleading standard. *See U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) ( "[Under Rule 9(b), a] plaintiff alleging fraud must therefore support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue" (internal quotations omitted)). The Court will therefore dismiss Ella Paradis's fraudulent inducement claim, but grant Ella Paradis leave to amend this claim to satisfy Rule 9(b)'s requirements.[6] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997) ("Ordinarily where a complaint is dismissed on Rule 9(b) 'failure to plead with particularity' grounds alone, leave to amend is granted.")

Finally, the Court finds Ella Paradis adequately alleged unfair trade practices. Ella Paradis brings this claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). To state a claim under this Act, a party must show "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *TLO S. Farms, Inc. v. Heartland Farms, Inc.*, No. 2D18-1639, 2019 WL 4551385, at *2 (Fla. Dist. Ct. App. 2019). A deceptive act occurs when "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). An unfair practice is "one that offends established public policy and one that is immoral,

---

[6] Because the Court will dismiss the fraudulent inducement claim for failing to comply with Rule 9(b), it will not address Gen3's other arguments in favor of dismissing this claim.

unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (internal citations omitted).

The parties dispute whether Rule 9(b)'s heightened pleading standard applies to a FDUTPA claim, but the Court concludes that this standard does not apply. Florida district courts are split on whether Rule 9(b) should apply to FDUTPA claims involving fraud. *See Weiss v. Gen. Motors LLC*, No. 19-21552, 2019 WL 5394621, at *7 (S.D. Fla. 2019) ("[T]here is a split of authority within the Southern District [of Florida] as to whether Rule 9(b) applies to FDUTPA claims."). Although neither the Eleventh nor the Third Circuit has directly addressed whether Rule 9(b) applies to FDUTPA, their decisions support the conclusion that it does not. The Eleventh Circuit has explained that "[FDUTPA's] proscription against unfair and deceptive acts and practices sweeps far more broadly than the doctrine of fraud." *Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 992 (11th Cir. 2010) (holding collateral estoppel did not prevent a FDUTPA claim even though it was based on the same allegations as a failed fraud claim). The Third Circuit, when addressing Pennsylvania's equivalent to FDUTPA, noted that Rule 9(b)'s requirement does not apply to a claim for deceptive acts under this statute. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 n. 33 (3d Cir. 2013) ("[A] UTPCPL [Pennsylvania Unfair Trade Practice and Consumer Protection Law] claim based on deceptive conduct differs from a claim based on fraudulent conduct [a fraud claim] in that a plaintiff does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b)." (internal citations omitted)). Based on this authority, the Court concludes that deceptive act claims under FDUTPA, like deceptive act claims under Pennsylvania's statute, are broader than fraudulent conduct and not subject to Rule 9(b).

Here, Ella Paradis alleges Gen3 committed a deceptive act or unfair practice under the FDUTPA. Ella Paradis alleges Gen3 misled it and other consumers about "the nature, quality, and characteristics of GEN3's capabilities and services." Am. Answer and Countercls., Counterclaim ¶ 79. Ella Paradis also alleges Gen3 misled it about Gen3's "capability, capacity, and knowledge to meet [Ella Paradis's] minimum revenue and ROAS requirements." *Id.* at ¶ 81. Gen3 argues these allegations are insufficient to plead a deceptive act or unfair practice because they rely on puffery from Gen3's website. This argument fails, however, because Ella Paradis does not rely only on Gen3's website. Ella Paradis also relies on statements made by Gen3 directly to Ella Paradis. *See Id.*

Ella Paradis has also adequately alleged damages under FDUTPA. Damages under FDUTPA can include 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. Dist. Ct. App. 2004). Ella Paradis alleges Gen3 misled it about the quality of Gen3's services. As a result, Ella Paradis allegedly paid more under the contracts than these services were worth. The difference between the value of the services Gen3 represented it could perform and the value of the services Gen3 did in fact perform are cognizable damages under FDUTPA.

**CONCLUSION**

Because Ella Paradis has adequately pled its breach of contract, unjust enrichment, and FDUTPA claims, the Court will deny Gen3's motion to dismiss these claims. Because Ella Paradis's fraudulent inducement claim does not satisfy Rule 9(b)'s heightened pleading standard, the Court will grant Gen3's motion to dismiss this claim. The Court will also grant Ella Paradis leave to amend this claim.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.